1   IVAN L. KALLICK (CA BAR NO. 097649)
    ikallick@manatt.com
2   ILEANA M. HERNANDEZ (CA BAR NO. 198906)
    ihernandez@manatt.com
3   MANATT, PHELPS & PHILLIPS, LLP
    11355 West Olympic Boulevard
4   Los Angeles, California 90064-1614
    Telephone: (310) 312-4000
5   Facsimile: (310) 312-4224

6
    Attorneys for
7   RICHARD K. DIAMOND, Trustee

8

9            UNITED STATES BANKRUPTCY COURT

10        FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                 SANTA ANA DIVISION

12

13  In re                          | Case No.: 8:05-10551-RK

14  BREA COMMUNITY HOSPITAL         | Chapter 7
    CORPORATION,
15
                 Debtor.
16

17                                  | **CHAPTER 7 TRUSTEE'S NOTICE
                                    OF MOTION AND MOTION FOR
18                                  ORDER DISALLOWING PROOF
                                    OF CLAIM NO. 246 OF JEREMY
19                                  GONZALEZ; MEMORANDUM OF
                                    POINTS AND AUTHORITIES;
20                                  DECLARATIONS OF RICHARD
                                    DIAMOND, MOSES LEBOVITS,
21                                  AND ILEANA M. HERNANDEZ IN
                                    SUPPORT THEREOF**
22

23                                  | Proof of Claim No.:   246
24

25

26                                  | Date:       January 18, 2011
                                    Time:       2:30 p.m.
27                                  Courtroom:  5D – Judge Kwan

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1

1 | **TO THE HONORABLE ROBERT N. KWAN, UNITED STATES**

2 | **BANKRUPTCY JUDGE AND ALL INTERESTED PARTIES;**

3 | **PLEASE TAKE NOTICE** that a hearing will be conducted on January 18,

4 | 2011 at 2:30 p.m., or as soon thereafter as the matter may be heard, before the

5 | Honorable Robert N. Kwan, Judge of the United States Bankruptcy Court, in

6 | Courtroom 5D of the United States Bankruptcy Court for the Central District of

7 | California, Santa Ana Division, located at 411 West Fourth Street, Santa Ana,

8 | California 92701. The hearing will be conducted to consider the Motion of Richard

9 | K. Diamond, Chapter 7 Trustee (the "Trustee") of the estate of *In re Brea*

10 | *Community Hospital Corporation, dba Brea Community Hospital Corporation of*

11 | *Delaware* ("Hospital" or "Debtor"), for an Order disallowing Proof of Claim No.

12 | 246 filed by Jeremy Gonzalez ("Claim No. 246"), or alternatively, reducing the

13 | allowable amount of Claim No. 246 pursuant to 11 U.S.C. §502 (the "Motion").

14 | The Trustee first requests that the Court enter an Order establishing that the

15 | initial amount of Claim No. 246 of $6 million has been reduced to $3,164,513 as a

16 | result of settlement payments received from other named defendants in an medical

17 | malpractice lawsuit filed in Los Angeles County Superior Court ("medical

18 | malpractice lawsuit") and as a result of agreement from counsel for Mr. Gonzalez.

19 | Second, the Trustee requests that the Court enter an Order disallowing Claim No.

20 | 246 on the following grounds:

21 | (1) Jeremy Gonzalez has failed to provide sufficient evidence to establish

22 | that the Hospital was negligent and breached a standard of care owed to Mr.

23 | Gonzalez; and

24 | (2) Mr. Gonzalez has failed to provide evidence establishing that the

25 | Hospital caused the alleged injuries sustained by Mr. Gonzalez.

26 | Alternatively, the Trustee moves for a reduction in the amount of Claim No.

27 | 246 on the grounds that:

28 |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                    1                    NOTICE OF MOTION AND MOTION FOR ORDER
DISALLOWING PROOF OF CLAIM NO. 246 OF
JEREMY GONZALEZ

1    (1)    Mr. Gonzalez's recovery against the Hospital may be reduced pursuant

2    to the Medical Injury Compensation Reform Act ("MICRA");

3    (2)    The Hospital is entitled to a set off for the settlement payments made

4    by the other named defendants in the underlying medical malpractice lawsuit; and

5    (3)    Claim No. 246 improperly asserts an amount in excess of the amount

6    that Mr. Gonzalez recovered from the individual physicians, who were primarily

7    liable for the alleged injuries suffered by Mr. Gonzalez.

8    This Motion is made pursuant to Federal Rule of Bankruptcy Procedure 3007

9    and Local Bankruptcy Rule 3007-1 and is a "contested matter" under Federal Rule

10    of Bankruptcy Procedure 9014. This Motion is based upon this Notice of the

11    Motion and Motion, the attached Memorandum of Points and Authorities, and the

12    attached Declarations of Richard Diamond, Moses Lebovits, and Ileana M.

13    Hernandez, as well as upon the pleadings, files and records of this proceeding, and

14    upon such other and further oral and documentary evidence and argument as may

15    be presented to the Court at or prior to the hearing on the Objection.

16    PLEASE TAKE FURTHER NOTICE that pursuant to Local Bankruptcy

17    Rule 3007-1(b)(3)(A), any interested party opposing this Motion must file with the

18    Clerk of the Bankruptcy Court and serve upon the Office of the United States

19    Trustee, located at 411 West Fourth Street, Suite 9041, Santa Ana, CA 92701, and

20    the Trustee's counsel, whose names and address are on the first page of this notice,

21    a written response to this Motion at least fourteen (14) calendar days prior to the

22    hearing date set forth above. Such opposition must include a complete written

23    statement of all reasons in opposition to this Motion, declarations and copies of all

24    photographs and documentary evidence on which the responding party intends to

25    rely, and any responding memorandum of points and authorities.

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

300167361.1                                 2                        NOTICE OF MOTION AND MOTION FOR ORDER
DISALLOWING PROOF OF CLAIM NO. 246 OF
JEREMY GONZALEZ

1     PLEASE TAKE FURTHER NOTICE that pursuant to Local Bankruptcy

2   3007(b)(3)(B), the failure to follow this procedure may be deemed by the Court as

3   consent to the relief requested in the Motion without further notice or hearing.

4   Dated: December 14, 2010                    MANATT, PHELPS & PHILLIPS, LLP

5

6                                              /s/ Ivan L. Kallick

7                                         Ivan L. Kallick
                                          Attorneys for Richard K. Diamond,
8                                         Chapter 7 Trustee

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                          3            NOTICE OF MOTION AND MOTION FOR ORDER
                                                   DISALLOWING PROOF OF CLAIM NO. 246 OF
                                                                    JEREMY GONZALEZ

## OBJECTION TO PROOF OF CLAIM

Richard K. Diamond, Chapter 7 Trustee (the "Trustee") of the estate of *In re Brea Community Hospital Corporation, dba Brea Community Hospital Corporation of Delaware* (the "Hospital" or "Debtor") objects to Proof of Claim No. 246 filed by Claimant Jeremy Gonzalez ("Claim No. 246") on the grounds indicated below (the "Objection"). A true and correct copy of Claim No. 246 is attached to the Declaration of Ileana M. Hernandez and is incorporated herein by this reference. The legal basis for this Objection is more particularly described in the accompanying Memorandum of Points and Authorities.

| Claim # | Claimant | Date Filed | Filed as | Amount of Initial Claim |
|---------|----------|------------|----------|-------------------------|
| 246 | Jeremy Gonzalez | April 8, 2005 | Left Blank | $6,000,000 |

### Objection and Relief Sought:

The Trustee requests that the Court enter an Order establishing that the initial amount of Claim No. 246 of $6 million has been reduced to $3,164,513 as a result of settlement payments received from other named defendants in an medical malpractice lawsuit filed in Los Angeles County Superior Court ("medical malpractice lawsuit") and as a result of agreement from counsel for Claimant. Regardless of whether this Court treats Claim No. 246 as a $6 million or $3.1 million claim, the Trustee objects to Claim No. 246 on the grounds that: (1) Claimant has failed to provide sufficient evidence to establish that the Hospital was negligent and breached a standard of care owed to Claimant; and (2) Claimant has failed to provide evidence establishing that the Hospital caused the alleged injuries sustained by Claimant.

Alternatively, the Trustee moves for a reduction in the amount of Claim No. 246 on the grounds that:

1         (1)    Claimant's recovery against the Hospital may be reduced pursuant to

2   the Medical Injury Compensation Reform Act ("MICRA");

3         (2)    The Hospital is entitled to a set off for the settlement payments made

4   by the other named defendants in the underlying medical malpractice lawsuit; and

5         (3)    Claim No. 246 improperly asserts an amount in excess of the amount

6   that Claimant recovered from the individual physicians, who were primarily liable

7   for the alleged injuries suffered by Claimant.

8        Should Claimant provide additional documentation prior to the hearing on

9   this matter, the Trustee reserves the right to object to Claim No. 246 on additional

10   grounds.

11

12   Dated:  December 14, 2010           MANATT, PHELPS & PHILLIPS, LLP

13

14                               /s/ Ivan L. Kallick
                            Ivan L. Kallick
15                       Attorneys for Richard K. Diamond,
                       Chapter 7 Trustee

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF MOTION AND MOTION FOR ORDER
DISALLOWING PROOF OF CLAIM NO. 246 OF
JEREMY GONZALEZ

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................... 1

II.  STATEMENT OF FACTS ............................................................. 4

    A.   Bankruptcy Case ................................................................. 4

    B.   Claim No. 246 ..................................................................... 5

        1.   Medical Malpractice Lawsuit ...................................... 5

        2.   Reduction of Claim No. 246 as a Result of Settlement
            with Non-Debtor Defendants ...................................... 6

        3.   Settlement Discussions ............................................... 7

III. LEGAL ARGUMENT ................................................................... 8

    A.   The Court Should Exercise Jurisdiction Over Claim No. 246.............. 9

    B.   Claim No. 246 Has Been Reduced From $6 Million to $3.1
        Million ................................................................................. 10

    C.   Claim No. 246 Should be Disallowed Because Mr. Gonzalez
        Cannot Establish that the Hospital Was Negligent ........................... 13

        1.   The Hospital Did Not Breach the Standard of Care ................. 13

        2.   Mr. Gonzalez Cannot Establish that the Alleged Breach of
            the Hospital Caused His Injuries ............................... 15

    D.   Alternatively, Claim No. 246 Should Be Reduced Pursuant to
        MICRA and the Apportionment of Liability Among the Named
        Defendants ........................................................................... 18

        1.   Any Damages That Mr. Gonzalez May Recover From the
            Hospital Will Be Reduced Pursuant to MICRA ...................... 18

        2.   The Hospital Is Entitled to Set Offs for the Settlement
            Made By the Other Defendants Named in the Underlying
            Medical Mal-Practice Lawsuit .................................. 20

        3.   Mr. Gonzalez Is Not Entitled to An Allowed Unsecured
            Claim of More Than $500,000 .................................. 22

IV.  CONCLUSION ........................................................................... 23

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF OBJECTION AND TRUSTEE'S
OBJECTION TO PROOF OF CLAIM FILED BY
JEREMY GONZALEZ, PROOF OF CLAIM NO. 246

# TABLE OF AUTHORITIES

**Page**

## CASES

*Barris v. County of Los Angeles*,
    20 Cal.4th 101 (1999)....................................................................18

*Fraijo v. Hartland Hospital*,
    99 Cal.App.3d 331 (1979) .............................................................14

*Headland v. Superior Court*,
    34 Cal.3d 695 (1983) ....................................................................14

*In re Allegheny International, Inc.*,
    954 F.2d 167 (3rd Cir. 1992) ..........................................................9

*In re Dow Corning Corp.*,
    211 B.R. 546 (Bankr. E.D. Mich. 1997) .......................................10

*In re Ice Cream Liquidation, Inc.*,
    281 B.R. 154 (Bankr. D. Conn. 2002)...........................................10

*In re King Street Investments, Inc.*,
    219 B.R. 848 (9th Circ. BAP 1998) ................................................9

*In re Pacific Gas & Electric Co.*,
    279 B.R. 561 (Bankr. N.D. Cal. 2002) ..........................................10

*In re UAL Corp.*,
    310 B.R. 373 (Bankr. N.D. Ill. 2004) ...........................................10

*Mitchell v. Gonzales*,
    54 Cal.3d 1041 (1991)...................................................................15

## STATUTES

11 U.S.C. § 157(b)(2)(B)................................................................10

11 U.S.C. § 157(b)(5) ....................................................................10

11 U.S.C. § 157(c)(2) .....................................................................10

11 U.S.C. § 502.........................................................................8, 9

11 U.S.C. § 502(b)(1) ......................................................................9

28 U.S.C. § 157(b)(2)(B)............................................................9, 10

28 U.S.C. § 157(b)(5) ....................................................................10

28 U.S.C. § 157(c) and (e).............................................................10

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3   Chapter 7 of the Bankruptcy Code ......................................................................... 4, 5

4   Chapter 11 of the Bankruptcy Code ......................................................................... 4

5   Cal. Code Civ. Proc. § 877 ...................................................................................... 20

6   Cal. Code Civ. Proc. § 3333.1 ............................................................................. 3, 19

7   Cal. Code Civ. Proc. § 3333.1(a) ........................................................................... 19

8   Cal. Code Civ. Proc. § 3333.2 ............................................................................. 3, 18

## RULES

9

10   Federal Rule of Bankruptcy Procedure 3007 ........................................................... 8

Federal Rule of Bankruptcy Procedure 3007-1 ....................................................... 8

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1

iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Jeremy Gonzalez ("Mr. Gonzalez") filed a $6 million unsecured non-priority claim against the estate of Brea Community Hospital Corporation dba Brea Community Hospital of Delaware (the "Hospital" or "Debtor") based on personal injuries sustained by Mr. Gonzalez as a result of treatment he received at the Hospital prior to the filing of the bankruptcy case. Mr. Gonzalez was a patient at the Hospital for six days and was admitted to the Hospital in very serious condition.

Specifically, Mr. Gonzalez's proof of claim, designated on the Court's claim register as Proof of Claim No. 246 ("Claim No. 246"), arises from a medical malpractice lawsuit filed on or about January 5, 2005, by Mr. Gonzalez, through his guardian ad litem, in the Los Angeles County Superior Court, Case No. KC045401, against the Hospital and certain doctors who were responsible for the care of Mr. Gonzalez ("medical malpractice lawsuit"). After being admitted to the Hospital on July 30, 2004, Mr. Gonzalez suffered a cardiopulmonary arrest resulting in physical damage to his body, including permanent and irreversible neurologic damage. Mr. Gonzalez alleged that the physicians who were responsible for treating him negligently failed to either examine, evaluate, diagnosis, monitor or treat Mr. Gonzalez despite his critical condition. As to the Hospital, Mr. Gonzalez alleged that the arrest he suffered from could have been prevented if the nursing staff had informed the admitting physician of his critical condition at the time he was admitted. According to his experts, Mr. Gonzalez will require nursing home care for the rest of his life as a result of the Hospital staff's alleged negligence.

Mr. Gonzalez has not provided and will not and cannot provide any evidence to support its grossly inflated claim against the Hospital. Mr. Gonzalez has already received more than $2.8 million in settlement payments from the insurance carriers

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1

1

NOTICE OF OBJECTION AND TRUSTEE'S
OBJECTION TO PROOF OF CLAIM FILED BY
JEREMY GONZALEZ, PROOF OF CLAIM NO. 246

1    for the physicians who were named in the medical malpractice lawsuit.[1] As a

2    result, Mr. Gonzalez's counsel agreed to reduce the amount he was seeking against

3    the Estate to approximately $3.1 million based on those settlement payments. Mr.

4    Gonzalez now will likely dispute the reduction of the amount of Claim No. 246 on

5    the grounds that he never filed with this Court an amended proof of claim. The

6    overwhelming evidence, however, demonstrates that Mr. Gonzalez agreed to

7    appropriately reduce the amount of his claim in light of the settlement payments

8    that he had received. Accordingly, this Court should treat Claim No. 246 as a $3.1

9    million claim based on Mr. Gonzalez's representation to the Trustee and the

10   Trustee's reliance on such representation for purposes of determining an

11   appropriate distribution amount to pay and reserve for general unsecured non-

12   priority claims, including Mr. Gonzalez's claim.

13   Regardless of whether this Court treats Mr. Gonzalez's claim as a $6 million

14   or $3.1 million claim, Claim No. 246 should be disallowed in its entirety. Mr.

15   Gonzalez has not and cannot provide sufficient evidence to establish that the

16   Hospital was negligent. Based on the documentation that Mr. Gonzalez has

17   produced in support of his claim and the Trustee's investigation of the underlying

18   medical malpractice lawsuit, through his court-approved special litigation counsel,

19   Mr. Gonzalez has failed to provide any evidence supporting his claim that the

20   Hospital breached the standard of care in its treatment of Mr. Gonzalez. Further,

21   even assuming *arguendo* that the Hospital did breach the standard of care, Mr.

22   Gonzalez has not and cannot establish that the alleged breach of the Hospital caused

23   his injuries.

24   Mr. Gonzalez is essentially arguing that the nursing staff of the Hospital

25   should have defied the orders of the admitting, attending and/or emergency

26   department physicians and transferred Mr. Gonzalez to the ICU instead of the

27

28

[1] There was no medical malpractice insurance in place that would have covered the Hospital's pre-petition liability for this claim.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                    2                    NOTICE OF MOTION AND MOTION FOR ORDER
DISALLOWING PROOF OF CLAIM NO. 246 OF
JEREMY GONZALEZ

1    medical-surgical floor, and that if such a transfer was made, Mr. Gonzalez would

2    not have suffered the cardiorespiratory arrest.  Mr. Gonzalez's contentions are

3    flawed and based on sheer speculation.  Mr. Gonzalez cannot establish that the

4    Hospital protocol or standard of care required that the nursing staff defy the

5    physicians' orders and move up the chain of command to the Hospital's Chief of

6    Medicine to request that Mr. Gonzalez be transferred to the ICU.  Further, even

7    assuming that the standard of care required that the nursing staff defy physicians'

8    orders (which the Trustee disputes), Mr. Gonzalez cannot establish that he would

9    have been transferred in time to the ICU to avoid the cardiorespiratory arrest that he

10   suffered.  Further, Mr. Gonzalez cannot even prove that the nursing staff's alleged

11   actions or inactions were a substantial factor in contributing to the harm suffered by

12   Mr. Gonzalez.  In the absence of sufficient evidence establishing the Hospital's

13   alleged professional negligence, Claim No. 246 should be disallowed in its entirety.

14         To the extent this Court is not inclined to deny Claim No. 246, any amount

15   that Mr. Gonzalez may recover against the Estate will be reduced pursuant to

16   Medical Injury Compensation Reform Act ("MICRA").  Under California Code of

17   Civil Procedure §3333.2, Mr. Gonzalez's non-economic damages are capped at

18   $250,000.  It is undisputed that Mr. Gonzalez has already received the maximum

19   value that he can recover for his alleged non-economic damages.  With respect to

20   Mr. Gonzalez's economic damages, under California Code of Civil Procedure

21   §3333.1, his recovery may be offset by benefits that he has received from Social

22   Security, state or federal disability medical coverage, Medi-Cal and/or Medicare.

23   Further, even if this Court finds that the Hospital was partially liable for Mr.

24   Gonzalez's injury, the Hospital is entitled to utilization of proper collateral sources

25   through MICRA.  Based on both Mr. Gonzalez's economist and the non-debtor

26   defendants' economist's estimate of the total amount of economic damages that Mr.

27   Gonzalez could have recovered against all named defendants in the underlying

28   medical malpractice lawsuit if it had gone to trial and the settlement payments that

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                          3                    NOTICE OF MOTION AND MOTION FOR ORDER
                                                         DISALLOWING PROOF OF CLAIM NO. 246 OF
                                                         JEREMY GONZALEZ

1    he has already received from the other named defendants, any recovery that Mr.

2    Gonzalez could obtain from the Hospital is *de minimus*. Accordingly, Mr.

3    Gonzalez's $3.1 million claim against the Hospital is grossly inflated and must be

4    substantially reduced.

5        In addition, it is important to note that Claim No. 246 improperly asserts an

6    amount in excess of the amount that Mr. Gonzalez recovered from the individual

7    physicians, who were primarily liable for the alleged injuries suffered by Mr.

8    Gonzalez. Each of the defendants paid between $500,000 to $1 million to settle the

9    lawsuit. Mr. Gonzalez is certainly not entitled to a claim of more than $500,000

10   against the Hospital when the evidence produced to date does not sufficiently

11   establish the Hospital's liability. Accordingly, the Court should reduce Claim No.

12   246 to an unsecured, non-priority claim in an amount less than has been paid by

13   each of the individual defendants in the underlying medical malpractice lawsuit.

14                                    **II.**

15                          **STATEMENT OF FACTS**

16   **A.    Bankruptcy Case**

17       This case was commenced by the filing of a voluntary petition under chapter

18   11 of the Bankruptcy Code by the Debtor on January 28, 2005. At the time, the

19   Debtor operated a 162-bed hospital located in Brea, California (the "Hospital").

20   The Debtor continued as a debtor in possession until March 17, 2005, when this

21   Court entered an order converting the matter to a case under Chapter 7 of the

22   Bankruptcy Code, and thereafter the Trustee, was appointed and has continued to

23   serve since his appointment. [Declaration of Richard A. Diamond ("Diamond

24   Decl."), ¶¶ 3-4.]

25       Upon the conversion of the case, the Trustee assumed responsibility for the

26   Hospital – its financial operations, its patients, and its continuing service to the

27   Brea community. The Trustee operated the Hospital for several weeks but soon

28   recognized that continued operation of the Hospital by a Chapter 7 trustee was not

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                4                NOTICE OF MOTION AND MOTION FOR ORDER
DISALLOWING PROOF OF CLAIM NO. 246 OF
JEREMY GONZALEZ

1    financially or medically feasible or advisable.  With the permission of the Court,

2    given on April 5, 2005 after two hearings, the Trustee began and then concluded an

3    orderly closure of the Hospital.  (Diamond Decl., ¶ 4.)

4    **B.    Claim No. 246**

5         Once he concluded the closure of the Hospital, the Trustee began his

6    investigation of various matters in the Chapter 7 case, including an evaluation of

7    the proofs of claim filed by creditors in this bankruptcy matter.  Specifically, the

8    Trustee attempted to gain a full and complete understanding of a proof of claim

9    filed by Mr. Gonzalez, which totaled more than $6 million in purported money

10   damages against the Debtor and the Estate for injuries Mr. Gonzalez suffered while

11   hospitalized at the Hospital.  (Diamond Decl., ¶ 5.)

12        1.    **Medical Malpractice Lawsuit**

13        In April 2004, Jeremy Gonzalez, at age 22, was involved in a motor vehicle

14   accident.  As a result of the accident, he suffered fractures of the pelvis and femur,

15   necessitating a laparotomy and approximately three weeks of intubation and

16   mechanical ventilation secondary to associated respiratory failure.  On July 26,

17   2004, he was seen by his primary physician, Dr. Michael Kwok.  Four days later,

18   on July 30, 2004, Mr. Gonzalez arrived in the Emergency Department at the

19   Hospital, complaining of severe shortness of breath.  Upon admission to the

20   Hospital, Mr. Gonzalez was seen by Dr. Mark Lee, the admitting physician, and Dr.

21   Edward Lee, the attending physician.  As the admitting physician, Dr. Mark Lee

22   made the determination to send Mr. Gonzalez to the medical-surgical floor and Dr.

23   Edward Lee, who was the attending physician, left the orders in place.  Although

24   Mr. Gonzalez was in respiratory distress when he was admitted, before he left the

25   ER, he was breathing easier.  (Declaration of Moses Lebovits ("Lebovits Decl."),

26   ¶ 5.)

27        The nursing and the Hospital staff, in accordance with the protocol at the

28   Hospital, and every other hospital in the medical community, followed the

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

300167361.1                                    5                      NOTICE OF MOTION AND MOTION FOR ORDER
                                                                     DISALLOWING PROOF OF CLAIM NO. 246 OF
                                                                     JEREMY GONZALEZ

1  physicians' orders and transferred Mr. Gonzalez to the medical-surgical floor where

2  he remained until he later suffered a cardiorespiratory arrest.  He was ultimately

3  diagnosed with an encephalopathy.  His status failed to improve and he was

4  transferred to Anaheim Memorial Hospital on August 4, 2004, where he remained

5  until September 21, 2004.  Thereafter, Mr. Gonzalez has been cared for in his

6  parents' home where he remains in a persistent vegetative state.  (Lebovits Decl.,

7  ¶ 6.)

8      As a result of this incident, on or about January 5, 2005, Mr. Gonzalez filed

9  the medical malpractice lawsuit.  Mr. Gonzalez alleged in the medical malpractice

10  lawsuit that the injuries sustained by Mr. Gonzalez were due to the negligence of

11  physicians and the Hospital's staff.  Specifically, with regards to the Hospital, Mr.

12  Gonzalez contended that the nursing staff of the Hospital breached the standard of

13  care by failing to properly evaluate and monitor Mr. Gonzalez and failing to inform

14  the admitting physician of Mr. Gonzalez's critical condition at the time he was

15  admitted.  (A true and correct copy of the Complaint filed in the medical

16  malpractice lawsuit is attached as Exhibit A to the Lebovits Decl., ¶ 7.)

17      Because there was no medical malpractice insurance in place that would have

18  covered the Hospital's pre-petition liability from this claim, Mr. Gonzalez did not

19  seek relief from the automatic stay to permit Mr. Gonzalez to pursue the medical

20  malpractice lawsuit against the Debtor.  (Diamond Decl., ¶ 7.)  The medical

21  malpractice lawsuit eventually settled against the non-debtor defendants for a total

22  amount of $2,835,487.00.  (Diamond Decl., ¶ 8; Lebovits Decl. ¶24.)

23      2.  **Reduction of Claim No. 246 as a Result of Settlement with Non-Debtor Defendants**

24

25      On April 8, 2005, Mr. Gonzalez filed in this Bankruptcy Court a proof of

26  claim in the amount of $6 million, without attaching any supporting documents or

27  evidence.  (A true and correct copy of Proof of Claim No. 246 is attached hereto as

28  Exhibit 1 to the Declaration of Ileana M. Hernandez ("Hernandez Decl.", ¶ 3.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                              6                    NOTICE OF MOTION AND MOTION FOR ORDER
                                                              DISALLOWING PROOF OF CLAIM NO. 246 OF
                                                                            JEREMY GONZALEZ

1    On or about April 1, 2008, Mr. Gonzalez's counsel informed the Trustee's

2    counsel that the underlying lawsuit had been settled and requested the status of Mr.

3    Gonzalez's proof of claim.  In response, the Trustee's counsel informed Mr.

4    Gonzalez that the Trustee was evaluating multiple proofs of claims, including Mr.

5    Gonzalez's claim, and requested that Mr. Gonzalez provide any and all information

6    and documentation that supported Claim No. 246.  (Hernandez Decl., ¶ 4.)  In

7    response, on April 2, 2008, Mr. Gonzalez's counsel sent a detailed letter setting

8    forth facts supporting Claim No. 246 and attaching a summary of Mr. Gonzalez's

9    economic damages and a life-care plan prepared by his expert.  (Hernandez Decl.,

10   ¶ 5.)  In the April 2, 2008 letter, Mr. Gonzalez's counsel expressly stated that the $6

11   million proof of claim could be treated as a $3,164,513 proof of claim in light of the

12   settlement payments his client had received from the other named defendants in the

13   medical malpractice lawsuit.  (A true and correct copy of the April 2, 2008 letter as

14   Exhibit 2 to the Hernandez Decl., ¶ 5.)

15        3.    **Settlement Discussions**

16        In an effort to investigate the basis for Mr. Gonzalez's Proof of Claim, the

17   Trustee, through his court-appointed general bankruptcy counsel, engaged in

18   informal discovery and discussions with Mr. Gonzalez's counsel.  The Trustee's

19   counsel further communicated with former principals of the Hospital, individuals,

20   and insurance companies involved in the state court action filed by Mr. Gonzalez.

21   (Diamond Decl., ¶ 7.)  The Trustee determined that it was necessary to retain

22   counsel who specialized in medical malpractice matters and who could properly

23   evaluate and analyze Mr. Gonzalez's proof of claim by reviewing the medical

24   records, data, and expert reports received from Mr. Gonzalez's counsel, and

25   determine whether it was appropriate to object to the $3,164,513 proof of claim.

26   The Trustee filed an Application for an order authorizing the employment of

27   Daniels, Fine, Israel, Schonbuch & Lebovits, LPP as the Trustee' counsel to

28   evaluate and/or prosecute an objection to Mr. Gonzalez's malpractice proof of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                        7

NOTICE OF MOTION AND MOTION FOR ORDER
DISALLOWING PROOF OF CLAIM NO. 246 OF
JEREMY GONZALEZ

1    claim (the "Application"). An order approving the Application was entered on

2    February 3, 2010. (*See* Docket No. 1023.) (Diamond Decl., ¶ 9.)

3          The Trustee, through the assistance of the court appointed special counsel,

4    thoroughly reviewed the documents provided by Mr. Gonzalez's counsel, including

5    medical records, deposition transcripts, trial exhibits, pleadings, discovery

6    responses, various motions to approve settlement of the underlying case, and expert

7    reports and communicated with the physicians' counsel in the underlying medical

8    malpractice lawsuit. Based on the Trustee's special counsel's evaluation and

9    analysis of the information at hand, the Trustee did not believe that Mr. Gonzalez

10   had a viable claim against the Debtor. (Diamond Decl., ¶ 10; Lebovits Decl., ¶ 4).

11         In an effort to resolve his potential objection to Mr. Gonzalez's proof of

12   claim, the Trustee initiated settlement discussions with Mr. Gonzalez's counsel.

13   After multiple written and extensive communications, the parties agreed to engage

14   in mediation to try to resolve this matter before proceeding with the expense and

15   cost of formally objecting to and litigating Mr. Gonzalez's proof of claim. On or

16   about October 14, 2010, the parties participated in mediation before the Honorable

17   Joe Hilberman. Despite the Trustee's attempt to resolve the matter, the parties were

18   unable to agree on the allowable amount of Claim No. 246. (Diamond Decl., ¶11).

19                                          **III.**

20                                **LEGAL ARGUMENT**

21         This Objection is brought under Federal Rule of Bankruptcy Procedure

22   3007, which states that "[a]n objection to the allowance of a claim shall be in

23   writing and filed" and pursuant to Central District Local Bankruptcy Rule 3007-1.

24   The specific authority for this Motion is under 11 U.S.C. § 502, which provides, in

25   pertinent part:

26         "(a) a claim or interest, proof of which is filed under section 501 of
           this title, is deemed allowed, unless a party in interest . . . objects.
27

28         (b) . . . if such objection to a claim is made, the court, after notice and
           a hearing, shall determine the amount of such claim in lawful currency

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                    8          NOTICE OF MOTION AND MOTION FOR ORDER
                                          DISALLOWING PROOF OF CLAIM NO. 246 OF
                                          JEREMY GONZALEZ

of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –

    (1)  such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . "

11 U.S.C. § 502.

Based on 11 U.S.C. § 502(b)(1), the Trustee objects and moves to disallow Claim No. 246 on the ground that it is unenforceable against the Debtor because (1) the Hospital did not breach the standard of care; and (2) even if the Hospital did breach the standard of care, Mr. Gonzalez cannot establish that the alleged breach caused Mr. Gonzalez's injuries. Alternatively, the Trustee objects and moves to reduce Claim No. 246 on the grounds that: (1) Mr. Gonzalez's recovery will be reduced pursuant to MICRA; and (2) Mr. Gonzalez's request for an allowed proof of claim in the amount of $3.1 million is in excess of the amount already paid by the non-debtor defendants whose apportionment of liability is greater than the Hospital's liability, if any.

As a result of Mr. Gonzalez's failure and inability to provide supporting evidence, Claim No. 246 lacks prima facie validity and the burden is on the claimant to establish a valid claim. *See In re King Street Investments, Inc.*, 219 B.R. 848, 858 (9th Circ. BAP 1998) (*citing In re Allegheny International, Inc.*, 954 F.2d 167, 173 (3rd Cir. 1992), for the proposition that a claim must allege facts "sufficient to support a legal liability to the claimant" in order to satisfy the claimant's initial obligation to go forward).

Even if the Court elects to treat Mr. Gonzalez's proof of claim as prima facie valid, Mr. Gonzalez still will be obligated to produce evidence to support his claim and the amount requested.

## A.     The Court Should Exercise Jurisdiction Over Claim No. 246

Section 157(b)(2)(B) restricts a bankruptcy's courts power to liquidate or estimate personal injury tort or wrongful death claims for purposes of distribution.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                     9

NOTICE OF MOTION AND MOTION FOR ORDER
DISALLOWING PROOF OF CLAIM NO. 246 OF
JEREMY GONZALEZ

1   28 U.S.C. §157(b)(2)(B).  The authority to liquidate claims for personal injury tort

2   claims rests with the district court in which the bankruptcy court is pending. 28

3   U.S.C. §157(b)(5); *In re Pacific Gas & Electric Co.*, 279 B.R. 561, 565 (Bankr.

4   N.D. Cal. 2002); *In re Ice Cream Liquidation, Inc.*, 281 B.R. 154 (Bankr. D. Conn.

5   2002).  Despite 11 U.S.C. §157(b)(2)(B) and (b)(5), there is nothing that prevents

6   this Court from conducting pre-trial proceedings on personal injury claims. *See In*

7   *re UAL Corp.*, 310 B.R. 373, 383 (Bankr. N.D. Ill. 2004) (holding that section

8   157(b)(5) did not prevent pre-trial proceedings in a personal injury action from

9   being conducted by the bankruptcy court and that nothing prevented the court from

10  making recommendations to the district court even if it could not enter a final

11  order).  Similarly, courts have concluded that section 157(b)(5) does not abrogate

12  the ability of a bankruptcy court to liquidate personal injury tort claims by consent

13  under section 157(c)(2). *See In re Dow Corning Corp.*, 211 B.R. 546, 561 (Bankr.

14  E.D. Mich. 1997) (holding that the bankruptcy court could adjudicate personal

15  injury tort claims as a unit of the district court, so long as the procedural

16  requirements of 28 U.S.C. §157(c) and (e) are satisfied.)

17          In this case, the Court should exercise jurisdiction over this matter and

18  conduct the pre-trial proceedings on this Objection to Claim No. 246.  Although it

19  may be precluded from issuing a final order, the Court may submit to the district

20  court a recommendation on whether to disallow the claim and/or reduce Mr.

21  Gonzalez's proof of claim based on the arguments and evidence provided by the

22  parties to this Court.

23  **B.    Claim No. 246 Has Been Reduced From $6 Million to $3.1 Million**

24          Claim No. 246 has been reduced from $6 million to $3.1 million as a result

25  of more than $2.8 million in settlement payments Mr. Gonzalez received from the

26  non-debtor defendants named in the underlying medical malpractice lawsuit and the

27  written representations of Mr. Gonzalez's counsel.  Mr. Gonzalez may now argue

28  that he never reduced the amount of Claim No. 246 because he never filed an

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                    10                    NOTICE OF MOTION AND MOTION FOR ORDER
DISALLOWING PROOF OF CLAIM NO. 246 OF
JEREMY GONZALEZ

1    amended proof of claim. Such argument is completely meritless in light of the

2    overwhelming evidence confirming Mr. Gonzalez's agreement to reduce the

3    amount of his claim.

4        Mr. Gonzalez originally filed Claim No. 246 seeking $6 million against the

5    Hospital for injuries he allegedly sustained while in the Hospital. (Hernandez

6    Decl., ¶ 3.) On or about April 1, 2008, Mr. Gonzalez's counsel informed the

7    Trustee's counsel that the underlying lawsuit had been settled and requested the

8    status of Mr. Gonzalez's proof of claim. In response, the Trustee's counsel

9    informed Mr. Gonzalez that the Trustee was evaluating multiple proofs of claim,

10    including Mr. Gonzalez's claim, and requested that Mr. Gonzalez provide any and

11    all information and documentation that supported Claim No. 246. (Hernandez

12    Decl., ¶ 4.) In response, on April 2, 2008, Mr. Gonzalez's counsel sent a detailed

13    letter setting forth facts supporting his contention that he had a strong case against

14    the Debtor and attached a summary of Mr. Gonzalez's economic damages and life-

15    care plan prepared by his expert. (Hernandez Decl., ¶ 5.) In the April 2, 2008

16    letter, Mr. Gonzalez's counsel expressly stated that the $6 million proof of claim

17    could be treated as a $3,164,513 proof of claim in light of the settlement payments

18    his client had received from the other named defendants in the medical malpractice

19    lawsuit. (*See* Exhibit 2 to the Hernandez Decl., ¶ 5.)

20        In an e-mail dated November 18, 2008, the Trustee's counsel expressly

21    confirmed Mr. Gonzalez's counsel's representation that he was reducing Mr.

22    Gonzalez's proof of claim from $6 million to $3.1 million. (A true and correct

23    copy of the November 18, 2008 e-mail is attached hereto as Exhibit 3 to the

24    Hernandez Decl., ¶ 6.) The Trustee's counsel expressly stated and explained to Mr.

25    Gonzalez's counsel that the Estate was preparing a motion seeking the Court's

26    approval to make an interim distribution to all allowed general unsecured claims.

27    Since there were several proofs of claim that had not yet been resolved, the

28    Trustee's counsel informed Mr. Gonzalez's counsel that the Trustee would be

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                              11

NOTICE OF MOTION AND MOTION FOR ORDER
DISALLOWING PROOF OF CLAIM NO. 246 OF
JEREMY GONZALEZ

1   reserving the calculated distribution amount for each of the unresolved proof of

2   claim, including Mr. Gonzalez's proof of claim.  Further, the Trustee's counsel

3   explained that the reserved pro rata distribution of Mr. Gonzalez's proof of claim

4   would be based on the $3,164,513 amount (per his April 2, 2008 letter).  In

5   response to the November 18, 2010 e-mail, Mr. Gonzalez's counsel confirmed that

6   he had received the information and never objected to the content of the e-mail.

7   (Hernandez Decl., ¶ 6.)

8          On or about December 5, 2008, the Trustee served Mr. Gonzalez with the

9   Motion for Order Authorizing Trustee to Make Interim Distributions of

10  Unencumbered Cash (the "Distribution Motion"), which included a chart expressly

11  setting forth the proposed distribution amount for each allowed general unsecured

12  claim and each distribution amount reserved for those claims that had not yet been

13  resolved.  As an interested party and as one that had notice of the Distribution

14  Motion, Mr. Gonzalez had standing to object to the Distribution Motion, as did any

15  other creditor who was an interested party and was served with the Motion.  The

16  notice of the Motion specifically provided that any party who was served with the

17  Motion could respond, oppose, or object to the Motion.  Once again, Mr. Gonzalez

18  or his counsel never opposed or objected to the Distribution Motion or the

19  distribution amount set aside for Mr. Gonzalez claim.  (A true and correct copy of

20  the relevant portions of the Distribution Motion are attached hereto as Exhibit 4 to

21  the Hernandez Decl., ¶ 7.)

22         Based on the evidence detailed above, Claim No. 246 should be treated as a

23  claim in the amount of $3,164,513.  Accordingly, the Trustee requests that the

24  Court issue an order establishing that Claim No. 246 has been reduced from $ 6

25  million to $31,164,513.

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES          300167361.1                     12          NOTICE OF MOTION AND MOTION FOR ORDER
                                                                DISALLOWING PROOF OF CLAIM NO. 246 OF
                                                                                       JEREMY GONZALEZ

**C.    Claim No. 246 Should be Disallowed Because Mr. Gonzalez Cannot Establish that the Hospital Was Negligent**

Regardless of whether Claim No. 246 is treated as a $6 million or $3.1 million claim, the Court should disallow Claim No. 246 on the grounds that Mr. Gonzalez cannot establish that the Hospital was negligent.

**1.    The Hospital Did Not Breach the Standard of Care**

Mr. Gonzalez has failed to provide any evidence supporting his claim that the Hospital breached the standard of care in its treatment of Mr. Gonzalez. The issue of standard of care and the alleged breach as to the Hospital is whether the nursing staff failed to recognize that Mr. Gonzalez should not have been on a medical-surgical floor, but rather in the Intensive Care Unit ("ICU"). According to Mr. Gonzalez, the nursing staff should have disregarded the physicians' orders and sent Mr. Gonzalez to the ICU instead of the medical-surgical floor. However, Mr. Gonzalez's claim against the Hospital is flawed because the decision of where to send the patient is made by the admitting physician (through the emergency room and/or attending physician). A member of the nursing staff cannot, under any circumstances, override, disregard, countermand or ignore a physician's order. Dr. Mark Lee, who evaluated Mr. Gonzalez in the Hospital's emergency department, and/or Dr. Edward Lee, who was Mr. Gonzalez's attending physician in the Hospital, observed Mr. Gonzalez when he was admitted to the Hospital and made a determination that he should be admitted to the medical-surgical floor, rather than the ICU. A nurse had no obligation, let alone the power or authority to do anything but follow the physician's order. At most, a nurse who disagrees with a physician's order could question the physician or voice his/her disagreement. However, a nurse is not obligated to do so and to suggest that if this had been done, either Dr. Lee would have agreed with the nurse, recanted his diagnosis and sent Mr. Gonzalez to the ICU because the nurse suggested he do so, is sheer speculation. (Lebovits Decl., ¶ 8.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1

13

NOTICE OF MOTION AND MOTION FOR ORDER
DISALLOWING PROOF OF CLAIM NO. 246 OF
JEREMY GONZALEZ

1    CACI Jury Instruction 504, Standard of Care for Nurses, states that a nurse is

2    negligent if he/she fails to use the level of skill, knowledge, and care in diagnosis

3    and treatment that other reasonably careful nurses would use in similar

4    circumstances. "Today's nurses are held to strict professional standards of

5    knowledge and performance, although there are still varying levels of competence

6    relating to education and experience." *Fraijo v. Hartland Hospital*, 99 Cal.App.3d

7    331, 342 (1979); *see also Headland v. Superior Court*, 34 Cal.3d 695, 700-704

8    (1983).

9    In this case, the nursing staff at the Hospital acted reasonably and

10    appropriately in following both Dr. Lees' orders. Mr. Gonzalez has not and cannot

11    offer any evidence which would support their position that the nursing staff at the

12    Hospital had the authority to countermand the physicians' orders and should not

13    have followed the physicians' orders. Such conduct would assuredly been

14    insubordination and would be contrary to hospital protocol and policy at every

15    hospital. The fact that in this case, in retrospect, the physicians' orders were wrong,

16    does not change the duties and limitations that the nursing staff is bound to follow

17    under all circumstances. (Lebovits Decl., ¶ 9.)

18    Nor has Mr. Gonzalez offered any evidence demonstrating that the nursing

19    staff failed to inform the attending physician of changes to Mr. Gonzalez's

20    condition prior to his cardiorespiratory arrest. Because Mr. Gonzalez has not

21    deposed any of the nurses who cared for Mr. Gonzalez and has not conducted

22    discovery into the conduct of the nursing staff, Mr. Gonzalez cannot even

23    affirmatively state that the nurses did not advise Dr. Lee that Mr. Gonzalez's

24    condition indicated that he be sent to the ICU. In other words, it is possible that the

25    nursing staff did make such a recommendation to Dr. Lee and he ignored it.

26    (Lebovits Decl., ¶ 10.)

27    Further, Mr. Gonzalez cannot and has not offered any evidence that the

28    nursing staff at the Hospital acted below the standard of care. Mr. Gonzalez has not

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                    14                    NOTICE OF MOTION AND MOTION FOR ORDER
DISALLOWING PROOF OF CLAIM NO. 246 OF
JEREMY GONZALEZ

1   provided any evidence demonstrating what the Hospital protocol was and how the

2   nursing staff's conduct deviated from the Hospital's protocol.  Mr. Gonzalez may

3   suggest that the standard of care required the nurses to either defy the physician's

4   orders and/or contact Dr. Lee's supervisor and move up the chain of command to

5   the Chief of Medicine to request that Mr. Gonzalez be transferred to the ICU.

6   However, the standard of care does not require this, nor has Mr. Gonzalez offered

7   any evidence that it does.  (Lebovits Decl., ¶ 11.)

8         2.   **Mr. Gonzalez Cannot Establish that the Alleged Breach of the
    Hospital Caused His Injuries**

9

10        CACI Jury Instruction 430, Causation:  Substantial Factor, states that a

11   substantial factor in causing harm is a factor that a reasonable person would

12   consider to have contributed to the harm.  As phrased, this definition of "substantial

13   factor" subsumes the "but for" test of causation.  "If the conduct which is claimed

14   to have caused the injury had nothing at all to do with the injuries, it could not be

15   said that the conduct was a factor, let alone a substantial factor, in the production of

16   the injuries." *Mitchell v. Gonzales*, 54 Cal.3d 1041, 1052, (1991); *see also* CACI

17   Jury Instruction 431, Can Be More Than One Cause.

18        Even assuming *arguendo* that the Hospital did breach the standard of care,

19   Mr. Gonzalez cannot establish causation as defined under California law.  Based on

20   the evidence that Mr. Gonzalez has produced to date, the facts are as follows:  In

21   the early morning hours of July 30' 2005, Mr. Gonzalez's parents took him to the

22   Hospital.  When he presented to the Hospital's Emergency Room, Mr. Gonzalez

23   was in severe respiratory distress, making sounds of upper airway obstruction.  An

24   x-ray of the soft-tissues of his neck was performed and Dr. Mark Lee, the

25   emergency room physician working at that time interpreted it as normal.  It

26   certainly was not.  The x-ray demonstrated a narrowing of his upper airway where

27   the endotracheal tube had been placed after the auto accident.  The standard of care

28   required Dr. Mark Lee to properly interpret the x-ray and to consult with an ENT

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1

15

NOTICE OF MOTION AND MOTION FOR ORDER
DISALLOWING PROOF OF CLAIM NO. 246 OF
JEREMY GONZALEZ

1   physician because of the risk of airway obstruction.  Instead, Dr. Mark Lee

2   admitted Mr. Gonzalez to Dr. Edward Lee, an internist, who failed to evaluate him

3   and failed to provide orders to properly monitor Mr. Gonzalez's oxygenation,

4   which had been low upon admission to the ER.  At approximately 7:00 a.m., Dr.

5   Edward Lee, signed out to his associate, Dr. Aparna Akolkar.  (Lebovits Decl.,

6   ¶ 13.)

7           Dr. Akolkar, who was deposed in the underlying medical malpractice

8   lawsuit, testified that she had been called by the ER physician (Dr. Kadakia) and

9   informed that the x-ray of Mr. Gonzalez's neck, taken in the ER earlier that

10  morning was mis-read by the ER physician and it actually demonstrated a

11  significant narrowing of Mr. Gonzalez's upper airway.  She could not verify when

12  she was called, however, discovery documented that this was before 8:40 a.m.  In

13  response to the call regarding the x-ray report, Dr. Akolkar called the nursing

14  station where Mr. Gonzalez was located, (she called only one time) and did not get

15  through.  She did not make another attempt, going about her rounds at another

16  hospital, and finally arriving at Hospital about 2 hours later.  At approximately 9:30

17  a.m., Mr. Gonzalez's airway occluded.  He suffered a cardiac arrest and when

18  oxygen was finally delivered, his brain was permanently damaged.  Neither Dr.

19  Edward Lee or Dr. Akolkar evaluated Mr. Gonzalez prior to his arrest.  A proper

20  evaluation would have prevented Mr. Gonzalez's brain injury.  (Lebovits Decl.,

21  ¶ 14.)

22          Dr. Akolkar had between 7:00 a.m., when Dr. Edward Lee signed out, until

23  9:30 a.m. to meet the standard of care which would have prevented damage to Mr.

24  Gonzalez.  Once Dr. Akolkar was informed by the ER physician that the x-ray was

25  abnormal, she had 1-1 ½ hours to make orders to the nurses that would have saved

26  Mr. Gonzalez.  Mr. Gonzalez alleges that it is the nurse's obligation to call the

27  physician.  Mr. Gonzalez's evidence, however, demonstrates that the physician was

28  called and Dr. Akolkar did not do what the standard of care required.  As of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                              16                    NOTICE OF MOTION AND MOTION FOR ORDER
                                                              DISALLOWING PROOF OF CLAIM NO. 246 OF
                                                              JEREMY GONZALEZ

1    8:51 a.m., the medical records, and Mr. Gonzalez's trial exhibits, show that Mr.

2    Gonzalez had not suffered any brain damage. This did not occur until 9:30 a.m.,

3    which was plenty of time for Dr. Akolkar to take measures to prevent the injury.

4    The nurses could not have done more than Dr. Kadakia did. The cause of the harm

5    was the two Dr. Lees and Dr. Akolkar. Thus, Mr. Gonzalez cannot establish that

6    the Hospital, specifically, the nursing staff's conduct, was a substantial factor in

7    causing the harm that Mr. Gonzalez suffered. (Lebovits Decl., ¶ 15.)

8        Further, Mr. Gonzalez cannot and has not offered any evidence that if Mr.

9    Gonzalez had been admitted to the ICU, his course would have been different than

10   it turned out to be, *i.e.* the physician would have taken a course of action that would

11   have prevented the ultimate anoxic encephalopathy. Mr. Gonzalez may contend

12   that the nurses should have countermanded the admitting order which included a

13   regular diet, with the instruction of nothing by mouth ("NPO"). Setting aside the

14   fact that a nurse cannot defy a physician's orders because she disagrees with them,

15   there is no evidence that the admitting physician would have made a NPO

16   instruction and to claim that he would have is complete speculation based on the

17   evidence presented by Mr. Gonzalez. (Lebovits Decl., ¶ 16.)

18       Mr. Gonzalez also may claim that if Dr. Edward Lee did not transfer Mr.

19   Gonzalez to the ICU once the nurse recommended that he do so, the nurse should

20   have contacted Dr. Edward Lee's supervisor and move up the chain of command to

21   the Chief of Medicine to request the transfer. Even assuming that the standard of

22   care required this (which the Trustee's disputes), Mr. Gonzalez cannot establish that

23   even if this had been done, it is "more likely than not" that Mr. Gonzalez would not

24   have suffered the cardiorespiratory arrest. By the time that a "supervisor" contacted

25   and consulted with Dr. Edward Lee and again evaluated Mr. Gonzalez and made

26   the decision to transfer Mr. Gonzalez to the ICU, the cardiorespiratory arrest might

27   not have been avoided. Accordingly, Mr. Gonzalez cannot establish that the

28   Hospital's alleged breach of the standard of care caused the alleged damages he

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                    17                    NOTICE OF MOTION AND MOTION FOR ORDER
                                                     DISALLOWING PROOF OF CLAIM NO. 246 OF
                                                     JEREMY GONZALEZ

1  sustained. (Lebovits Decl., ¶ 17.) As a result, in the absence of sufficient evidence

2  establishing the Hospital's alleged professional negligence, Claim No. 246 should

3  be disallowed in its entirety.

4  **D.  Alternatively, Claim No. 246 Should Be Reduced Pursuant to MICRA
   and the Apportionment of Liability Among the Named Defendants**

5

6       **1.  Any Damages That Mr. Gonzalez May Recover From the Hospital
            Will Be Reduced Pursuant to MICRA**

7       To the extent this Court is disinclined to deny Claim No. 246 outright, this

8  Court should reduce the $3.1 million claim to an unsecured, non-priority claim in

9  an amount less than has been paid by each of the individual co-defendants in the

10  medical malpractice lawsuit.

11       As part of the Medical Injury Compensation Reform Act ("MICRA"),

12  California Code of Civil Procedure §3333.2 limits the amount of award of *non-*

13  *economic* damages in an action for injury against a health care provider based on

14  professional negligence to a maximum of $250,000.  Cal. Civ. Code §3333.2;

15  *Barris v. County of Los Angeles*, 20 Cal.4th 101, 108 (1999) (Cap on noneconomic

16  damages recoverable in actions for professional negligence by a health care

17  provider established by MICRA, at a minimum, applies to traditional malpractice

18  claims against health care providers which are based on a failure to meet the

19  applicable standard of care in providing professional services).  In this matter,

20  California Code of Civil Procedure §3333.2 "caps" Mr. Gonzalez's non-economic

21  damages at $250,000.  It is undisputed that Mr. Gonzalez has already received the

22  maximum value that he can recover for his alleged non-economic damages.

23  (Lebovits Decl., ¶ 18.)

24       With respect to Mr. Gonzalez's economic damages, Mr. Gonzalez's

25  economist, Marianne Inouye, estimates the economic damages to be between $5.5

26  and $5.9 million depending on which scenario is adopted.  (A true and correct copy

27  of Ms. Inouye's summary of economic damages is attached as Exhibit B to the

28  Lebovits' Decl., ¶ 19.)  In each scenario, the largest component of damages is the

MANATT, PHELPS &
PHILLPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                    18                    NOTICE OF MOTION AND MOTION FOR ORDER
DISALLOWING PROOF OF CLAIM NO. 246 OF
JEREMY GONZALEZ

1  future medical care costs which total $4.4 million. Ms. Inouye's estimate is based

2  upon the life-care plan prepared by Mr. Gonzalez's expert, Dr. Sharon Kawaii, who

3  provided an analysis of Mr. Gonzalez's life expectancy and the medical care he

4  would need in the future. (A true and correct copy of Dr. Kawaii's life-care plan is

5  attached as Exhibit C to the Lebovits' Decl., ¶ 19.) Mr. Gonzalez now may argue,

6  contrary to his own expert, that Mr. Gonzalez has survived longer than was

7  previously expected and that as a result, the economic damages are more than $9

8  million. However, Mr. Gonzalez has failed to offer any evidence which would

9  support increasing the economic damages by 33% more than his own expert has

10  estimated. (Lebovits Decl., ¶ 20.) Further, Mr. Gonzalez is not even entitled to a

11  general unsecured claim for than $3.1 million.

12        While the Trustee generally does not dispute the cost of medical care as

13  outlined by Dr. Kawaii, Dr. Kawaii's life-care plan, which estimates future medical

14  care to be $4.4 million, fails to include any offsets required under California Code

15  of Civil Procedure §3333.1. California Code of Civil Procedure §3333.1(a)

16  abrogates the collateral source rule in medical negligence actions. If an injured

17  individual is entitled to benefits from Social Security, state or federal disability

18  medical coverage, Medi-Cal and/or Medicare, all those benefits are offset against

19  their economic damages. As such, the future medical care costs of $4.4 million

20  must be reduced in an amount equivalent to the benefits from Social Security, state

21  or federal disability, insurance medical coverage, Medi-Cal and/or Medicare.

22  Consequently, Mr. Gonzalez would receive a reduction to potential damages

23  attributable to future medical care by at least 50% ($2.2 million). As a result, that

24  reduces the total damages that Mr. Gonzalez could have recovered against all

25  named defendants in the underlying medical malpractice lawsuit if it had gone to

26  trial to $3.3 to $3.7 million (based on Mr. Gonzalez's economist's estimated

27  economic damages of $5.5 and $5.9 million). (Lebovits Decl., ¶ 21.)

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1

19

NOTICE OF MOTION AND MOTION FOR ORDER
DISALLOWING PROOF OF CLAIM NO. 246 OF
JEREMY GONZALEZ

1    Based on the non-debtor defendants' economist, the total potential damages

2    in this case are likely in the range of $3 to $5 million in light of the utilization of

3    proper collateral sources through MICRA that defendants would avail themselves.

4    (A true and correct copy of defendant's Motion for Determination of Good Faith

5    Settlement is attached as Exhibit D to the Lebovits Decl., ¶22.)  Since Mr. Gonzalez

6    has already received $2.9 million from the other defendants, any recovery from the

7    Hospital will be *de minimus* particularly if the Hospital's experts can prove that the

8    total potential damages in this case is no more than $3 million.

9    2.    **The Hospital Is Entitled to Set Offs for the Settlement Made By the Other Defendants Named in the Underlying Medical Malpractice Lawsuit**

11   Even if the Hospital is partially liable for Mr. Gonzalez's injury, the Hospital

12   is entitled to set-offs for the settlement made by the non-debtor defendants named

13   in the underlying medical malpractice lawsuit.  As provided by California Code of

14   Civil Procedure §877, in pertinent part:

15   "Where a release, dismissal with or without prejudice, or a

16   covenant not to sue or not to enforce judgment is given in

17   good faith before verdict or judgment to one or more of a

18   number of tortfeasors claimed to be liable for the same

19   tort….it shall have the following effect… It shall not

20   discharge any other such party from liability unless its

21   terms so provide, but it shall reduce the claims against the

22   others in the amount stipulated by the release, the

23   dismissal or the covenant, or in the amount of the

24   consideration paid for it whichever is the greater."

25   Cal. Code Civ. Proc. §877; CACI Jury Instruction 3926, Settlement Deduction.

26   To date, Mr. Gonzalez has received a total of $2,937,532.00 (of which

27   $135,000 was allocated out of the settlement to Mr. Gonzalez's parents for a waiver

28   of their wrongful death claim) in settlement from the co-defendants in the medical

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                                      20                NOTICE OF MOTION AND MOTION FOR ORDER
                                                                  DISALLOWING PROOF OF CLAIM NO. 246 OF
                                                                  JEREMY GONZALEZ

1    malpractice lawsuit. Dr. Kwok, Mr. Gonzalez's primary physician who evaluated

2    Mr. Gonzalez approximately three months after his motor vehicle accident, paid

3    $465,000.00 ($35,000 was allocated to Mr. Gonzalez's parents for waiver of their

4    wrongful death claim). Dr. Mark Lee, who evaluated Mr. Gonzalez in the

5    emergency department of the Hospital four days after Mr. Gonzalez was seen by

6    Dr. Kwok, paid $987,483.00. Dr. Edward Lee, who was Mr. Gonzalez's attending

7    physician at the Hospital paid $985,049.89. Dr. Alkokar, who examined and

8    treated Mr. Gonzalez after he was transferred by Dr. Edward Lee, paid $500,000

9    ($100,000 was allocated to Mr. Gonzalez's parents for a waiver of their wrongful

10   death claim). (A true and correct copy of Mr. Gonzalez's Notice of Motion and

11   Motion to Approve Amounts of Settlement with Michael Kwok, M.D., Mark Lee,

12   M.D., and Edward Lee, M.D. is attached to the Lebovits Decl. as Exhibit E.) Based

13   on these settlement payments, Mr. Gonzalez and/or his parents have already

14   received $2,937,532.89, which amounts to approximately 73% to 97% of the total

15   damages that Mr. Gonzalez could recover if he was successful at the time of trial

16   (based on estimated damages of $3.3 to $3.7 million as discussed above). (Lebovits

17   Decl., ¶ 24.)

18        It is also relevant to note the apportionment of liability of each named

19   defendant in the medical malpractice lawsuit. According to the declaration in the

20   support of the motion for determination of good faith settlement prepared by Dr.

21   Mark Lee's counsel, Dr. Mark Lee's settlement is roughly between 20-30% of the

22   total potential liability of all defendants. Based on the settlement amounts that each

23   individual physician paid, if Dr. Mark Lee's settlement is roughly 20-30% of the

24   total potential liability, then Dr. Edward Lee's settlement is similarly 20-30% of the

25   total liability, Dr. Kwok's settlement is 10-15% of the total potential liability, and

26   Dr. Alkolkar's settlement is also 10-15% of the total potential liability. Therefore,

27   approximately 90% of the liability has already been apportioned to the co-

28   defendants, leaving only 10% that could be apportioned to the Hospital, even if

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1                    21                    NOTICE OF MOTION AND MOTION FOR ORDER
DISALLOWING PROOF OF CLAIM NO. 246 OF
JEREMY GONZALEZ

1    found liable.  Accordingly, Mr. Gonzalez has been appropriately compensated by

2    the parties, who were potentially more liable for the alleged damages he has

3    sustained.  Any damages that Mr. Gonzalez may recover against the Hospital (if

4    this Court found that such liability exists) must be apportioned based on the

5    settlement amount that has already been paid to Mr. Gonzalez.  (Lebovits Decl.,

6    ¶ 25.)

7        3.    **Mr. Gonzalez Is Not Entitled to An Allowed Unsecured Claim of
            More Than $500,000.**

8

9        It is undisputed that Mr. Gonzalez suffered a horrible injury, and to the extent

10   that it was caused by the physicians' failure to send him to the ICU, Mr. Gonzalez's

11   remedy was its cause of action against the physicians.[2]  The individual physicians,

12   Dr. Alkokar and Dr. Kwok, who were more likely liable for Mr. Gonzalez's

13   injuries, did not pay more than $500,000 to settle the medical malpractice lawsuit.

14   Yet, Mr. Gonzalez is seeking a $3.1 million claim against the Hospital without

15   providing sufficient evidence to prove the Hospital's alleged negligence.  In the

16   absence of evidence establishing the Hospital's apportionment of liability above

17   those of the individual physicians, Mr. Gonzalez is not entitled to an allowed

18   unsecured claim for more than $500,000.  Accordingly, to the extent this Court

19   finds that the Hospital was responsible for Mr. Gonzalez's alleged injuries, Claim

20   No. 246 should be reduced to an allowed non-priority general unsecured claim of

21   less than $500,000.

22   / / / /

23   / / / /

24   / / / /

25   / / / /

26

27   ---
     [2] And in fact, Mr. Gonzalez's medical malpractice lawsuit against Dr. Edward Lee and Dr. Mark Lee proved
28   successful in that each physician settled for policy limits (nearly one million from each physician).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES          300167361.1                      22        NOTICE OF MOTION AND MOTION FOR ORDER
                                                               DISALLOWING PROOF OF CLAIM NO. 246 OF
                                                               JEREMY GONZALEZ

1

## IV.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter an order establishing that Claim No. 246 has been reduced by settlement payments Mr. Gonzalez has received from the non-debtor defendants in the underlying medical malpractice lawsuit.  Further, the Trustee requests that the Court enter an order recommending the disallowance of Claim No. 246 or alternatively, the reduction in the allowed amount of Claim No. 246 to less than $500,000.

Dated:  December 14, 2010          MANATT, PHELPS & PHILLIPS, LLP


                                   _____/s/ Ivan L. Kallick_____
                                   Ivan L. Kallick
                                   Attorneys for Richard K. Diamond,
                                   Chapter 7 Trustee

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300167361.1

23

NOTICE OF MOTION AND MOTION FOR ORDER
DISALLOWING PROOF OF CLAIM NO. 246 OF
JEREMY GONZALEZ